UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JALONE DAVIS,<br><br>      Petitioner,<br><br>  vs.<br><br>JOSEPH T. SMITH,<br><br>      Respondent. | Case No. 9:06-CV-1389 (JKS) |

APPEARANCES:                                                OF COUNSEL:

    JALONE DAVIS
    01-A-4329
    Shawangunk Correctional Facility
    P.O. Box 700
    Wallkill, New York 12589
    Petitioner, pro se

    ANDREW M. CUOMO                               Alyson J. Gill
    Attorney General of the State of New York     Assistant Attorney General
    120 Broadway
    New York, New York 10271

BEFORE:

    JAMES K. SINGLETON, JR.
    Senior United States District Judge

## MEMORANDUM-DECISION AND ORDER

    Jalone Davis, a state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges a 2001 judgment of conviction entered in the Albany County Court on charges of second degree murder and second degree possession of a weapon. Petitioner claims that he was denied a fair trial due to the prosecution's failure to disclose *Brady* material and the trial court's failure to give a missing witness charge to the jury. Petitioner also claims that his statement to the police was involuntary and should have been suppressed, identification evidence was improperly admitted, the evidence adduced at trial was legally insufficient to support the verdict, and that his trial counsel rendered ineffective assistance when he failed to object to the trial

court's failure to give a missing witness charge.  *See* Docket Nos. 1 (Pet.); 13 (Mot. to amend); 19 (Order granting mot. to amend in part).  The Government has filed a Response.  *See* Docket Nos. 8 (Response); 9 (Mem.); 14 (Resp. to motion to amend).  Petitioner filed a traverse and a supplemental memorandum of law.  Docket Nos. 18 (Traverse); 20 (Supp. mem.).

## BACKGROUND

Petitioner was indicted in Albany County Court for the August 2000 murder of Leroy Cancer.  At trial, the People sought to prove that Petitioner shot Cancer on a street in Albany in retaliation for the earlier gang-related killing of Petitioner's friend.  In support of this argument, the People introduced a signed confession along with the testimony of an acquaintance to whom Petitioner had confessed, and the testimony of several other witnesses placing Petitioner in close proximity to the shooting.  Petitioner testified, denying any involvement and claiming the confession was coerced.  The jury returned a verdict of guilty, and Petitioner was sentenced to concurrent prison terms of 25 years to life for murder and 15 years for criminal possession of a weapon.

With the exception of his ineffective assistance of counsel claim, Petitioner raised all of his current claims on direct review.  *See* Docket No. 10, Attach. 2.  The Appellate Division affirmed the convictions in a reasoned decision.  *People v. Davis*, 18 A.D.3d 1016, 1016-17 (N.Y. App. Div. 3d Dep't 2005) (available in the record at Docket No. 10, Attach. 4).  The Court of Appeals denied review on August 15, 2005.  *People v. Davis*, 5 N.Y.3d 805 (2005) (available in the record at Docket No. 10, Attach. 6).  Petitioner moved for reargument/reconsideration in the Appellate Division on July 18, 2006, which was denied on August 31, 2006.  *See* Docket No. 10, Attach. 7.

On February 15, 2007, Petitioner filed a motion to vacate the judgment, pursuant to New York Criminal Procedure Law ("CPL") § 440.10.  He argued his trial counsel rendered ineffective assistance by:  (1) failing to object when the court permitted a witness to assert the Fifth Amendment privilege; (2) failing to object when the court refused to give a missing witness charge; and (3) failed to properly investigate Detective Kennedy's alleged prior misconduct.  He also argued the People had committed a *Brady* violation by failing to disclose information regarding prior allegations of coerced confessions by Detective Kennedy in other cases.  Docket No. 10, Attach. 8.

The trial court denied the motion, finding the ineffective assistance claims meritless and that the allegations of misconduct by Kennedy in an unrelated 1991 investigation did not constitute *Brady* material.  Docket No. 10, Attach. 10.  Leave to appeal was denied May 4, 2007.  Docket No. 10, Attach. 12.

Petitioner filed the instant petition on November 16, 2006.  Docket No. 1.  The Government filed a response disputing Petitioner's claims.  Docket Nos. 8 (Resp.); 9 (Mem.).  The original petition was deemed amended to include Petitioner's claim that trial counsel was ineffective for failing to object when the trial court did not give a missing witness charge.  Docket Nos. 13 (Mot. to amend); 19 (Order granting mot. to amend in part).  At that time, the Court also deemed Respondent's letter opposition at Docket No. 14 to be a supplemental response to the newly added claim.  Docket No. 19 at 6.  Petitioner filed a traverse and a supplemental memorandum.  Docket Nos. 18 (Traverse); 20 (Supp. mem.).

## LEGAL STANDARD

Because the instant petition was filed after April 24, 1996, any claim therein that was adjudicated by a state court on the merits is governed by the deferential standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001).  A decision is adjudicated "on the merits" when it finally resolves the claim, with res judicata effect, based on substantive rather than procedural grounds.  *Id.* at 311-12.  This is so, "even if the state court does not explicitly refer to either the federal claim or to relevant federal case law."  *Id.* at 312.

Under the deferential standard of review imposed by AEDPA, a writ of habeas corpus shall not be granted unless the state adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Court] has on a set of materially indistinguishable facts."

3

*Williams v. Taylor*, 529 U.S. 362, 413 (2000).  A state court decision involves an unreasonable application of Supreme Court case law if it "identifies the correct governing legal principle from [the Court's] decisions but unreasonably applies that principle to the particular facts of [a] prisoner's case."  *Id*.  To qualify as "unreasonable," it must be objectively unreasonable, a substantially higher threshold than merely incorrect.  *Schriro v. Landrigan*, 550 U.S. 465, 127 S. Ct. 1933, 1939 (2007).

The Supreme Court has also explained that clearly established Federal law "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."  *Williams*, 529 U.S. at 412.  In the absence of a holding of the Supreme Court regarding the issue presented on habeas review, "it cannot be said that the state court unreasonably applied clearly established Federal law."  *Carey v. Musladin*, 549 U.S. 70, 77, 127 S. Ct. 649, 654 (2006) (internal quotation marks removed).  Finally, the standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.  *Fry v. Pliler*, 551 U.S. 112, 127 S. Ct. 2321, 2328 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

In applying this standard, this Court reviews the last reasoned decision by a state court. *Jones v. Stinson*, 229 F.3d 112, 118 (2d Cir. 2000).  The Court presumes that the state court's findings of fact are correct, unless the petitioner rebuts the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).  The presumption of correctness applies to findings by both state trial and appellate courts.  *Whitaker v. Meachum*, 123 F.3d 714, 715 n.1 (2d Cir. 1997).

Claims that have not been adjudicated by a state court on the merits are reviewed *de novo* based on the record before the Court.  *See Cotto v. Herbert*, 331 F.3d 217, 230 (2d Cir. 2003).

**DISCUSSION**

I - <u>Failure to disclose statement of Andre Blakemore</u>

Petitioner contends he was denied a fair trial by the prosecution's failure to turn over the written statement of Andre Blakemore in violation of *Brady v. Maryland*, 373 U.S. 83 (1963). Docket No. 1 at 7.  Petitioner raised this claim on direct appeal, although it was primarily presented

4

as a claim that the prosecution had violated the related state-law duty of disclosure under *People v. Rosario*, 9 N.Y.2d 286 (1961).  Docket No. 10, Attach. 2 at 25.  The Appellate Division found that the adverse inference charge given by the trial court was a sufficient sanction for the *Rosario* violation, denying Petitioner's claim on the merits.  *People v. Davis*, 18 A.D.3d at 1019.  The Appellate Division did not discuss the *Brady* aspect of the claim.  *Id*.  In such a situation, this Court asks "whether the state court's ultimate decision was an 'unreasonable application' of clearly established Supreme Court precedent."  *See Sellan*, 261 F.3d at 311-12.

*Brady* and its progeny require the Government to disclose material information that is "favorable to the accused, either because it is exculpatory, or because it is impeaching." *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999).  A *Brady* violation occurs only where there is a "reasonable probability" that a different verdict would have resulted from disclosure of the information that the defendant claims was suppressed.  *Id*. at 281.  That is, "a constitutional error occurs, and the conviction must be reversed, only if the evidence is material in the sense that its suppression undermines confidence in the outcome of the trial." *United States v. Bagley,* 473 U.S. 667, 678 (1985).  The failure to preserve "potentially useful evidence" does not violate due process "*unless a criminal defendant can show bad faith on the part of the police.*"  *Youngblood v. Arizona,* 488 U.S. 51, 58 (1988) (emphasis added); *see also Illinois v. Fisher*, 540 U.S. 544, 547–48 (2004) (per curiam) (applying *Youngblood*).

The Appellate Court summarized the factual background of this claim:

> During the investigation of the crime, Kennedy interviewed and obtained a written statement from a 15-year-old who stated that he had seen defendant carrying a handgun and running from the area of the shooting shortly after it occurred.  Kennedy acknowledged at a Rosario hearing conducted by Supreme Court that he lost the written statement.  He explained that the teenage witness lived in the neighborhood where the killing occurred and the witness was concerned about his safety if his cooperation with police became known.  Kennedy thus placed the statement in a sealed envelope in his desk drawer and, in violation of normal police procedure, did not put a copy in the central file.  Thereafter, Kennedy was out of work for several months following back surgery and, when he returned, his desk had been cleaned and the statement was missing.  Despite continued searches up to the date of trial, Kennedy was unable to locate the statement.  At trial, the teenage witness testified and was cross-examined.  Supreme Court instructed the jury after Kennedy's trial testimony that it could draw an adverse inference against the People for their failure to

>produce the prior written statement that Kennedy had lost, and the jury could infer that the statement would not support and may even contradict the testimony of the teenage witness.

*Davis*, 18 A.D.3d at 1018-19.

Petitioner has failed to establish the materiality of the statement or bad faith on the part of the police who lost it.  First, Petitioner's contention that the statement contained material information is pure speculation.  The only evidence of the contents of the lost statement is the testimony of Andre Blakemore at the *Rosario* hearing and trial, and Detective Kennedy's testimony at the suppression and *Rosario* hearings.  According to both of these witnesses, the substance of Blakemore's statement was that he saw Petitioner run by him shortly after the murder with a gun in his hand.  *See* Reporter's Transcript at 460-65, 481, 674-80  (the transcript is available in the record in three volumes at Docket No. 10, Attachs. 14-16); Docket No. 10, Attach. 1 at A-44 (Suppression hearing transcript).  Andre Blakemore's mother also testified that her son told her as much on the night of the murder.  Tr. 770-71.  Given the consistency in the testimony of these three witnesses, it is highly unlikely the statement contained information helpful to Petitioner either because it was exculpatory or impeaching.[1]  Second, there is nothing showing bad faith on the part of the police.  Detective Kennedy testified that he put the statement in his desk to keep Blakemore's name off the street for as long as possible.  The statement was then lost during Kennedy's four-month leave following his back surgery.  Nothing in this suggests bad faith.  Accordingly, the Court finds that the state court's rejection of Petitioner's *Brady* claim was not contrary to or an unreasonable application of clearly established Supreme Court precedent.

II - Admission of Petitioner's statement

Petitioner contends he was denied a fair trial by the introduction of his allegedly coerced confession.  Docket No. 1 at 8-9.  The Appellate Division addressed this issue, finding that his confession was voluntary:

---

[1] Petitioner makes too much of the disagreement between Detective Kennedy and Andre Blakemore over whether the lost statement was handwritten by Andre or typed by Kennedy.  The jury was presented with this information and still apparently resolved credibility in the People's favor.

> We turn first to defendant's contention that his confession was involuntary and should have thus been suppressed. Determining whether a statement is voluntary is a factual issue governed by the totality of the circumstances (see People v Anderson, 42 NY2d 35, 38-39, 364 NE2d 1318, 396 NYS2d 625 [1977]; People v Ruger, 279 AD2d 795, 795, 718 NYS2d 732 [2001], lv denied 96 NY2d 806, 750 NE2d 86, 726 NYS2d 384 [2001]). The credibility assessments of the suppression court in making that determination are entitled deference (see People v Meissler, 305 AD2d 724, 725, 759 NYS2d 255 [2003], lv denied 100 NY2d 644, 801 NE2d 430, 769 NYS2d 209 [2003]; People v Ruger, supra at 795). Here, a combined Huntley/Wade hearing was held and the only witness who testified was Albany detective Kenneth Kennedy. Kennedy testified that prior to interviewing defendant, he provided him with Miranda warnings and defendant elected to proceed with the questioning. Kennedy stated that neither he nor any other detective involved in the interrogation made any threats toward defendant. He related that defendant initially denied involvement, but, when confronted with some of the evidence that police had obtained, defendant confessed. Defendant read the confession typed by Kennedy, made an addition to the statement, and then signed it. Supreme Court found Kennedy to be a credible witness and we discern no reason to reject this finding. Kennedy's testimony supports the determination that defendant's confession was voluntary.

*Davis*, 18 A.D.3d at 1017.

When determining the voluntariness of a Petitioner's statement, the question is whether his "will was overborne at the time" the statement was made or whether the statement was "the product of a rational intellect and a free will." *Reck v. Pate*, 367 U.S. 433, 440 (1961). In determining the voluntariness of a confession a court must evaluate the totality of the circumstances. *Arizona v. Fulminante*, 499 U.S. 279, 285-88 (1991). Courts consider such factors as the characteristics of the accused, the conditions of the interrogation, and the conduct of law enforcement officials. *Green v. Scully*, 850 F.2d 894, 901-02 (2d Cir. 1988).

In this case, the issue of voluntariness turns on the set of facts used to evaluate the totality of the circumstances. The trial court heard the evidence, made a credibility determination, and found that Detective Kennedy had provided a truthful account of Petitioner's interrogation. Docket No. 10, Attach. 1 at A-11 - A-19. The Appellate Division deferred to the trial court's credibility finding and affirmed Petitioner's conviction. Under AEDPA, "we must presume the state court's findings of fact are correct, unless the petitioner meets the 'burden of rebutting this presumption of correctness by clear and convincing evidence.'" *Lanfranco v. Murray*, 313 F.3d 112, 117 (2d Cir. 2002) (quoting 28 U.S.C. § 2254(e)(1)). The presumption of correctness applies to findings by both state trial and appellate courts. *Whitaker v. Meachum*, 123 F.3d 714, 715 n.1 (2d Cir. 1997).

Aside from his own allegations, the only thing the Petitioner offers in rebuttal of the presumption of correctness is a citation to an unrelated 1991 case in which Detective Kennedy was accused of coercing a confession. *See People v. Beverly*, 299 A.D.2d 744 (N.Y. App. Div. 3d Dep't 2002). In *Beverly*, the petitioner's conviction was reversed because counsel rendered ineffective assistance when he purposely avoided questioning Detective Kennedy about the allegedly coercive interrogation of one of the petitioner's codefendants. *Beverly*, 299 A.D.2d at 746-47. While *Beverly* demonstrates that Detective Kennedy has been *accused* of coercive tactics on one occasion in the past, it does not constitute clear and convincing evidence that he actually used such tactics against either Beverly in 1991 or Petitioner in 2000. Petitioner has failed to rebut the presumption of correctness. Presuming the correctness of the facts found by the trial court and set out by the Appellate Division, the Court finds the confession was voluntary.

III - Insufficiency of the evidence

Petitioner argues the evidence presented at trial was insufficient to support the jury verdict. Docket No. 1 at 9. Petitioner's argument rests primarily on his contention that his confession was coerced and that many of the witnesses who testified against him had motives to lie. *Id*. The Appellate Division addressed this argument on direct review:

> Defendant argues that the verdict was not supported by legally sufficient evidence and it was against the weight of the evidence. Applying the well-established criteria for analyzing these issues (see People v Bleakley, 69 NY2d 490, 495, 508 NE2d 672, 515 NYS2d 761 [1987]), we find no merit in this argument. Evidence of defendant's guilt included, among other things, his confession, testimony from one of his acquaintances that he admitted to her that he shot the victim, and testimony of witnesses placing him in close proximity to the scene when the crime occurred. This evidence was legally sufficient and, although defendant denied involvement in the crime when he testified, there is no reason to set aside the jury's assessment of credibility and its resolution of the conflicting evidence.

*Davis*, 18 A.D.3d at 1019.

The constitutional standard for sufficiency of the evidence is whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in the original). This court must, therefore, determine whether the decision of the Appellate Division on the merits unreasonably applied *Jackson*.

Petitioner mistakenly believes it is within the purview of this Court to reassess the credibility of witnesses and ultimately reweigh the evidence. Under *Jackson*, the role of this Court is to simply determine whether there is any evidence, if accepted as credible by the jury, sufficient to sustain conviction of the crime as prescribed by state law. That such evidence exists is clearly established by the record in this case. Petitioner bears the burden of establishing by clear and convincing evidence that the factual findings of the jury were erroneous; a burden Petitioner has failed to carry. Here, the Appellate Division, a state court, found that there was sufficient evidence to support conviction of the crimes under state law. Given the record in this case, the Court cannot find the state decision was contrary to or an unreasonable application of *Jackson*.

IV - Failure to give a missing witness charge

Petitioner submits he was denied a fair trial by the trial court's failure to give a missing witness instruction. The Appellate Division addressed this issue on direct review:

> We are unpersuaded by defendant's assertion that he was entitled to a missing witness charge regarding Kiemar Tarver, who the People stated in their opening was an eyewitness to the shooting. Tarver appeared at trial with counsel and informed Supreme Court that he would invoke his 5th Amendment privilege if called to testify. This resulted in him being an "unavailable" witness (see People v Savinon, 100 NY2d 192, 198, 791 NE2d 401, 761 NYS2d 144 [2003]) and, thus, the court correctly did not give a missing witness charge (see id.; People v Alston, 1 AD3d 627, 629, 766 NYS2d 724 [2003], lv denied 1 NY3d 594, 808 NE2d 362, 776 NYS2d 226 [2004]). We note that the court found that the People did not know in advance that Tarver would invoke this privilege, it instructed the jury to consider only evidence admitted in the trial and defense counsel was permitted to argue in summation that no eyewitnesses were produced.

*Davis*, 18 A.D.3d at 1019.

"It is not the province of a federal habeas court to reexamine state-court determinations of state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). It is also "well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge." *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973). To support a collateral attack on the judgment the question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process," not merely whether "the instruction is undesirable, erroneous, or

even 'universally condemned.'" *Id*. Where the defect is the failure to give an instruction, the burden is even heavier as an omitted or incomplete instruction is less likely to be prejudicial than an instruction that misstates the law. *See Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

The Second Circuit laid down a three-part test that a habeas petitioner must satisfy in order to prevail in a case where the state court fails to give a requested instruction. First, was the instruction required under state law? Second, if so, did the failure to give the instruction result in the denial of due process? Third, if so, did the state court's conclusion constitute an unreasonable application of clearly established Supreme Court law? *Davis v. Strack*, 270 F.3d 111, 124 (2d Cir. 2001).

"The 'missing witness' instruction allows a jury to draw an unfavorable inference based on a party's failure to call a witness who would normally be expected to support that party's version of events." *People v. Savinon*, 100 N.Y.2d 192, 197 (N.Y. 2003). There are three preconditions for giving a missing witness instruction under state law. "First, the witness's knowledge must be material to the trial. Second, the witness must be expected to give noncumulative testimony favorable to the party against whom the charge is sought. This has been referred to as the 'control' element, which requires the court to evaluate the relationship between the witness and the party to whom the witness is expected to be faithful. Third, the witness must be available to that party." *Id*.

Petitioner argues that, contrary to the decisions of the trial court and Appellate Division, Tarver was not unavailable because he was ineligible to invoke the Fifth Amendment privilege against self-incrimination. *See* Docket No. 18 at 52-58. More specifically, Petitioner asserts that the trial court erred by failing to conduct a hearing to determine if Tarver's testimony would be incriminating. *See Hiibel v. Sixth Judicial Dist. Ct.*, 542 U.S. 177, 189-90 (2004). The New York Court of Appeals has suggested that such a hearing could be necessary, especially where it is the controlling party that alleges that the "missing" witness would invoke the privilege. *People v. Macana*, 84 N.Y.2d 173, 177-78 (N.Y. 1994). In such a case, the witness should at least be "summoned and asked, for he may waive the privilege." *Id*. at 178 (quoting 2 Wigmore, Evidence § 286, at 201 [Chadbourn rev. 1979]). That is roughly the procedure utilized in this case. In the absence of the jury, Tarver was summoned before the trial court with his attorney present. Tr. 753.

Tarver's attorney indicated on the record that Tarver would invoke his privilege if called to testify. Tr. 754. Thus, unlike *Macana*, the fact that Tarver would invoke his privilege came from his own counsel rather than one of the interested parties. Under these circumstances, the Court cannot find that the Appellate Division misapplied state law in determining that Tarver was unavailable. Even if state law had called for the missing witness charge, its absence certainly did not so infect the entire trial as to deny Petitioner due process where, as here, the prosecutor's comments during his opening statement were equivocal, defense counsel was permitted to comment on the absence of any eye-witness testimony during summation, and the jury was instructed to limit itself to the evidence actually presented. Tr. 1289-92, 1385-88. Petitioner's claim accordingly fails.

V - Ineffective assistance of trial counsel

Petitioner asserts he was denied effective assistance of trial counsel when his attorney failed to ask for a missing witness charge regarding Kiemer Tarver. The Supreme Court, Albany County, addressed this argument in response to Petitioner's motion to vacate the judgment:

> The Appellate Division . . . has determined that defendant was not entitled to a missing witness charge relative to Kiemar Tarver. Accordingly, defendant's contention that his counsel erred by not requesting a missing witness charge is entirely without merit (see, CPL § 440.10(2)(a)). Defendant's further contention that his defense counsel erred when the Court allowed the witness to assert his Fifth Amendment privilege is similarly without merit. Legal counsel does not commit error by failing to advance a meritless objection.

Docket No. 10, Attach. 10 at 3.

The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in *Strickland v. Washington*, 466 U.S. 668 (1984). To support a claim of ineffective assistance of counsel, a petitioner must first show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. *Id*. at 687-88. After a petitioner identifies the acts or omissions that are alleged not to have been the result of reasonable professional judgment, the court must determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. *Id*. at 690; *Wiggins v. Smith*, 539 U.S. 510, 521 (2003). Second, a petitioner must establish that he was prejudiced by counsel's deficient performance. *Strickland*, 466 U.S. at 693-94. Prejudice is found where "there is a

11

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id*.

The decision of the Supreme Court to deny this claim on the ground that such a motion would have been fruitless is clearly not an unreasonable application of *Strickland*. The Court also notes that counsel's quick acquiescence to the unavailability of Tarver was likely a strategic move to help keep Tarver off the stand. Petitioner's claim accordingly fails.

VI - Pretrial identification procedures

Petitioner argues that all identification evidence should have been excluded because the pretrial identification procedures used by Detective Kennedy were unduly suggestive. Docket Nos. 1 at 11; 18 at 61-68. Petitioner's argument before this Court on this issue is extremely vague. *See id*. However, after a careful reading of Petitioner's pleadings, it would appear he is making essentially a *res ipsa loquitur* argument--the procedures used by Detective Kennedy must have been unduly suggestive because: (1) Elicia Ladson was detained on an arrest warrant at the time she identified Petitioner from a photo array; and (2) Ladson did not identify Petitioner at trial.

When the prosecution offers testimony from a witness to identify the defendant as a perpetrator of the offense, due process requires that the identification testimony be reliable. *See Manson v. Brathwaite*, 432 U.S. 98, 113-14 (1977); *Raheem v. Kelly*, 257 F.3d 122, 133 (2d Cir. 2001). "When the defendant objects to identification testimony to be given by a witness who has identified him prior to trial, a sequential inquiry is required in order to determine whether either the prior identification or an in-court identification of the defendant at trial is admissible." *Raheem*, 257 F.3d at 133. First, a court determines "whether the pretrial identification procedures unduly and unnecessarily suggested that the defendant was the perpetrator." *Id*. If the procedures were not unduly suggestive, there is no due process violation. *Id*. If the procedures were unduly suggestive, a court next asks "whether the identification was nonetheless independently reliable." *Id*.

Before trial Petitioner sought to suppress the trial identification testimony of Elicia Ladson, Andre Blakemore, and Kiemar Tarver. Docket No. 10, Attach. 1 at 6. A hearing was held at which

Detective Kennedy was the only witness to testify. *Id*. at 7. The state court found Detective Kennedy credible and made the following factual findings:

> On September 6, 2000, at approximately 8:40 p.m., the police brought Alicia Lattson to Albany City Police Headquarters on Arch Street. Alicia Lattson told Detective Kennedy that on August 26, 2000, in the evening, three black males had come to her home and were rustling around and changing clothes and/or gloves. She looked downstairs and observed three black males–two of whom she knew as "Skills" and "Fox"--and told them to leave.
>
> Detective Kennedy then placed on a table eight (8) black and white photographs of young black males with similar skin tone and hair, and asked Alicia Lattson if she recognized any of the black males who entered her home on August 26, 2000. Within ten seconds, Alicia Lattson pointed out defendant's photograph as one of the black males--whom she knows as "Skills"--who had entered her home on the evening of August 26, 2000. Alicia Lattson signed the back of the photograph, and Detectives Kennedy, Assenault and Simmons initialed near her signature.
>
> On September 7, 2000 at about 5:00 p.m., Jenna Blackmore brought her son, Andre Blackmore to the Albany City Police Headquarters. Andre Blackmore told Detective Kennedy that on August 26, 2000, in the evening, he had seen defendant running with a gun in the area of Lexington and First Street. Andre Blackmore knew defendant Jalone Davis because Davis had lived with his mother Jenna Blackmore on Judson Street. Detective Kennedy placed the same eight(8) black and white photographs face up on the table, and Andre Blackmore picked out the defendant as the person he saw running with a gun on August 26, 2000. Andre Blackmore signed the photograph on the back, and the detectives each initialed the photograph near Andre's signature.
>
> On October 11, 2000, at approximately 11:55 p.m., one Kevar Tarver was brought to the Albany City Police Headquarters. He told Detective Kennedy that he had seen the defendant Jalone Davis shoot the Cancer boy. Detective Kennedy placed the same eight (8) photographs of black males face up on a table, and Kevar Tarver identified the photo of defendant as the person he had seen shoot Leroy Cancer. He initialed the photograph he selected--which was then initialed by the detectives.

*Id*. at 7-9.[2] Based on these factual findings, the state court denied the motion to suppress, finding that the pretrial identifications were not unduly suggestive. *Id*. at 10.

Of the three witnesses Petitioner had sought to suppress, only Ladson and Andre Blakemore testified at trial, and only Andre Blakemore identified Petitioner.[3] As noted *supra*, Kiemar Tarver

---

[2]The state court used different spellings of the names of some of the witnesses--the Court has elected to use the spellings given in the trial transcript.

[3]The most damaging identification for Petitioner came from Regina Blakemore, who testified that after she told Petitioner that her son Andre had seen him with a gun, Petitioner admitted
(continued...)

did not testify because he was unavailable due to his invocation of his Fifth Amendment rights. Ladson's testimony conformed to the facts found at the suppression hearing up to the point of identifying Petitioner as either "Fox" or "Skills." Tr. 807-12. At that point she refused to identify anyone in the courtroom as one of the three men she had seen in the stairwell of her building. *Id*. Andre Blakemore, consistent with the findings of the state court at the suppression hearing, testified that he had seen Petitioner running with a gun in his hand shortly after Cancer was shot. Tr. 674-80. Petitioner raised the pretrial identification claim on direct review, apparently making a fuller argument than he has presented to this Court in the instant petition.[4] The Appellate Division addressed this claim as more fully articulated:

> We find no merit to the contention that the photographs and procedure used by police to have witnesses identify defendant were unduly suggestive. "A photo array is unduly suggestive if some characteristic of one picture draws the viewer's attention in such a way as to indicate that the police have made a particular selection" (People v Yousef, 8 AD3d 820, 821, 778 NYS2d 326 [2004], lv denied 3 NY3d 743, 820 NE2d 301, 786 NYS2d 822 [2004] [internal quotation marks and citations omitted]). The eight black and white photographs all depicted young males with similar skin tone and facial hair. Nothing in the photograph of defendant impermissibly draws attention to him. Nor was there any showing that the procedure used by the police in displaying the photographs to the witnesses was improper.

*Davis*, 18 A.D.3d at 1017-18.

Petitioner has completely failed to rebut the presumption of correctness that attaches to the factual findings of the state court. There is nothing in the procedures as found by the state court that would qualify as unduly suggestive. Petitioner's *res ipsa loquitur* argument is essentially a mere allegation that Detective Kennedy coerced the pretrial identifications. Mere allegations are

---

[3](...continued)
shooting Leroy Cancer. Tr. 763-64, 770-73.

[4]Petitioner's argument before the state courts was more cogent, arguing that he was the only person depicted in the photo array with a distinctive scar and lighter skin. *See* Docket No. 9 at 38. Respondent has been unable to obtain and file a copy of the photo array. However, given that Petitioner has not raised this argument before this Court, nor attempted to rebut the Appellate Division's factual determination that the photo array depicted young males of similar appearance, the Court will not consider whether the photo array itself was unduly suggestive. If it were to do so on this record, the Court would find that Petitioner had failed to rebut the presumption of correctness attached to the state court's findings.

insufficient, Petitioner must supply clear and convincing evidence to refute the factual findings of the state court. As he has not done so, the Court cannot say that the decision of the Appellate Division was contrary to or an unreasonable application of clearly established federal law.

## CONCLUSION

Petitioner's claims have been rejected by the state courts on the merits. The decisions of those courts cannot be said to be contrary to or an unreasonable application of clearly established federal law. Further, as reasonable jurists could not disagree that the errors alleged by Petitioner fail on the merits, the Court declines to issue a Certificate of Appealability.[5]

Accordingly, **IT IS HEREBY ORDERED** that:

1. Petitioner's application for writ of habeas corpus is DENIED;

2. The Court declines to issue a Certificate of Appealability; and

3. The Clerk shall enter judgment accordingly.

Dated this the 30th day of January 2009.

        /s/ James K. Singleton, Jr.
        **JAMES K. SINGLETON, JR.**
        United States District Judge

---

[5] A district court may grant a certificate of appealability only if a petitioner makes a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). "To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 482 (2000) (internal quotation marks and citations omitted).